IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION
CIVIL ACTION NUMBER:
3:22CV00018

| | |
|---|---|
| **Roscoe A. Gilmore,** *Plaintiff*, | ) ) ) ) |
| vs. | ) ) ) ) | **COMPLAINT** *(Jury Trial Requested)*
| **The City of Charlottesville,** *Defendant*. | ) ) ) |

**1.**

This action is brought by a black, male citizen of Louisa County, Virginia, for declaratory relief as well as damages. Plaintiff seeks to restrain Defendant City from maintaining a policy, practice, custom or usage of discriminating against Plaintiff for exercising his rights under Title VII of the Civil Rights Act of 1964, as amended in 1991, 42 USC §1983 and the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 621 *et seq.*, with respect to termination, compensation, terms, conditions, and privileges of employment in ways which deprive Plaintiff of equal employment opportunities and otherwise adversely affect Plaintiff's status as an employee.

**2.**

Jurisdiction of the Court is invoked pursuant to 28 USC § 1343 (3) and (4), 28 USC § 1331, and 42 USC § 2000e-5(f), this being a proceeding to enforce rights and remedies secured to the Plaintiff by Title VII of the Civil Rights Act of 1964, 42 USC §2000e et. seq. as amended and as

amended by the Civil Rights Act of 1991, 42 USC §1983 and the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 621.

3.

Jurisdiction is further invoked pursuant to 28 USC §§ 2201 and 2202, this being an action for declaratory relief declaring illegal the acts of Defendant complained of herein in violation of rights secured to Plaintiff by the several Civil Rights Acts and the Constitution.

4.

All conditions precedent to jurisdiction under 42 USC § 2000e-5(f)(3) have occurred or been compiled with, to writ:

- On or about December 31, 2021, Plaintiff timely submitted a charge of discrimination on the basis of retaliation, age and race discrimination to the Equal Employment Opportunity Commission (EEOC). Said Charge Number is 438-2021-00737.
- On or about February 4, 2022, the EEOC mailed Plaintiff a "notice of right to sue letter" as to charge # 438-2021-00737. A copy of this notice is attached and incorporated in this Complaint.

5.

Plaintiff, Roscoe A. Gilmore, is a black male citizen of the United States and the Commonwealth of Virginia and resides in Louisa County, Virginia. Gilmore is over the age of forty (40) years. At all times alleged herein, Plaintiff was an "employee" within the meaning of 42 USC § 2000e(f).

6.

The unlawful practices alleged herein were committed within the Commonwealth of Virginia; specifically in Albemarle County, Virginia.

**7.**

The City of Charlottesville is an independent city in the Commonwealth of Virginia. It is the county seat of Albemarle County, and is a municipality located within the jurisdiction of this court. At all times alleged herein, the Defendant City maintained a public utilities division which included among other things, the administration of the city water department, waste water department and gas department. At all times alleged herein, the Defendant City was an "employer" within the meaning of 42 USC §2000e(b) and the ADEA; and employed more than fifteen (15) employees. All employees herein were working within the course and scope of their employment and in furtherance of the employer's business.

**8.**

The Defendant City acted under the color of state and local laws by denying the Plaintiff his constitutional right to work in an environment free from discrimination and disparate treatment pursuant to, and guaranteed by, the 14th amendment to the United States Constitution in violation of 42 USC §1983.

**9.**

The Plaintiff contends that at all times alleged herein, he was qualified for the position he held prior to his termination from the Defendant City. The Plaintiff contends that he was subjected to disparate treatment due to his race and age, and in retaliation for previously engaging in protected activity, with regard to the terms of his work conditions, privileges, benefits and work environment. Plaintiff's claims of the violation of Title VII and ADEA arise from allegations of disparate treatment, discrimination and wrongful termination.

**10.**

The Plaintiff began employment with the City of Charlottesville public utilities in May, 1989 when he was hired to the position of Maintenance Worker II. He was ultimately promoted to the position of Maintenance Crew Supervisor in September 1996. He was employed in the position of Regulatory Compliance Administrator at the time of his unjustified, discriminatory and retaliatory termination from the City of Charlottesville in March, 2021.

**11.**

The Plaintiff contends that after being promoted to the position of Maintenance Crew Supervisor in 1996, he was treated differently than non-minority, similarly situated supervisors with regard to the terms and conditions of employment. The Plaintiff contends that among other things, he was not provided the same or similar equipment, support, authority, promotional opportunities, privileges and work environment as the non-minority supervisors due to his race. Furthermore, the Plaintiff contends that after being promoted to the position of supervisor in 1996, he was required to perform responsibilities associated with the position of Waste Water General Maintenance Supervisor. Notwithstanding, the Plaintiff's application for that position was rejected by the City of Charlottesville in 2005.

**12.**

As a result of the aforementioned discriminatory treatment the Plaintiff contends he was subjected to between 1996 and 2005, he filed a charge of race discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 122-2005-01977, against the City of Charlottesville for its then failure to promote him to the position of Waste Water General Maintenance Supervisor and/or Water General Maintenance Supervisor.

**13.**

The Plaintiff contends that based on the charge of discrimination he filed with the EEOC in 2005 against the City of Charlottesville, the EEOC investigated the Plaintiff's complaints and ultimately issued a determination finding that the evidence revealed reasonable cause to believe the Plaintiff's allegations of race discrimination were true and that he was denied promotions to the positions of Water General Maintenance Supervisor and Waste Water General Maintenance Supervisor due to his race. Further, the EEOC found the Defendant City's conduct to be in violation of Title VII of the Civil Rights Act of 1964, as amended. Further, the EEOC found that the Defendant City failed to promote the Plaintiff in retaliation for filing a prior charge of discrimination.

**14.**

Thereafter, in February, 2009, the Plaintiff filed a lawsuit against the City of Charlottesville in the United States District Court for the Western District of Virginia, Charlottesville Division, Civil Action Number 3:09CV00009, alleging that the City of Charlottesville failed to promote him to the aforementioned position(s) based on race discrimination and in retaliation for opposing practices made unlawful pursuant to Title VII of the Civil Rights Act of 1964 and as amended in 1991, and 42 USC §1983.

**15.**

Ultimately, the Plaintiff and the City of Charlottesville resolved their legal dispute and the lawsuit was dismissed with the consent of all parties. As part of the resolution of the lawsuit, among other things, the City of Charlottesville created and/or modified the position of Regulatory Compliance Administrator for the Plaintiff, and agreed that Lauren Hildebrand, the Plaintiff's immediate supervisor and Director of Utilities, would supervise him directly and

would hold regular performance evaluations and meetings with the Plaintiff to ensure a successful transition into the position.

16.

The Plaintiff further contends that in his capacity as Regulatory Compliance Administrator, he was primarily responsible for working independently to make sure local restaurants disposed of greases properly and maintained records on city maintenance forms. He was also required to keep records of Backflow Preventer Devices to be tested annually, and to ensure that the technicians certifications were up to date.

17.

The Plaintiff, in his capacity as Regulatory Compliance Administrator, was required to drive a city assigned vehicle throughout the city on a daily basis to inspect various businesses, including restaurants, gas stations and stores.

18.

The Plaintiff contends that after 2015, Hildebrand decreased their weekly meetings to meeting every other week, to monthly meetings and finally by having no meetings beginning in 2019. The Plaintiff contends that he and Hildebrand had no meetings since 2019, and that she never performed a job performance evaluation on him. Hildebrand never advised or informed the Plaintiff that his job performance was less than satisfactory.

19.

The Plaintiff contends that beginning in approximately March, 2019, Hildebrand abruptly stopped supervising him and he was required to report to Jason McIlwee and Roy Nester. There was no transition period or information provided to him about the new reporting system prior to the change. Thereafter, the Plaintiff was required to meet with McIlwee and Nester every

morning at 8am, and provide them with daily, and end of day emails regarding every task he performed that day. Both McIlwee and Nester are white males and were, at that time, under the age of forty (40) years with employment backgrounds in engineering.

**20.**

The Plaintiff contends that McIlwee and Nester almost immediately began a campaign to terminate him because the Plaintiff, the only black male over the age of forty (40) years in the department, did not "fit in" with McIlwee and Nester's vision for the department.

**21.**

After the Plaintiff began working under McIlwee and Nester, his job description was modified without explanation. Both McIlwee and Nester demanded that the Plaintiff utilize a specific computer software program with regard to inputting information related to his customers, however, the Plaintiff was not provided proper training on how to use the computer software program. Notwithstanding, the Plaintiff was reprimanded for not utilizing the software properly.

**22**.

The Plaintiff contends that he questioned Hildebrand about the changes in his job description; however, neither she nor McIlwee and Nester could show him where his job description required him to perform these additional tasks.

**23.**

The Plaintiff contends that in 2019, McIlwee required him to put more miles on the company vehicle he was assigned to drive. McIlwee also authorized two (2) other employees to drive the company vehicle the Plaintiff was assigned to drive, also for the purpose of putting more miles on it. Shortly thereafter, the Plaintiff was suspended for five (5) days for driving the company

vehicle excessively and for using the company vehicle for personal reasons when he drove it to a relative's house.

### 24.

The Plaintiff contends that based upon information and belief, two (2) other employees, non-minority, white males received a two (2) day suspension for personal use of a company vehicle, and were not terminated for doing so.

### 25.

The Plaintiff further contends that on at least one occasion, either McIlwee or Nester, or both, made negative expressions relating to the Plaintiff's age and questioned his retirement plans in the same context as expressions relating to the Plaintiff's job and/or job performance and/or ability to perform his job. Specifically, McIlwee and Nester insinuated that the Plaintiff's age kept him from learning new job tasks.

### 26.

The Plaintiff contends that McIlwee and Nester frequently excluded him from supervisory meetings and made very little effort to understand the job he performed. Yet, it was not unusual for either or both of them to express frustration with the manner in which the Plaintiff performed his job.

### 27.

The Plaintiff contends that he was the only black, minority administrator/supervisor working under the supervision of McIlwee and Nester. All other white, non-minority supervisors working under the supervision of McIlwee and Nester were treated with acceptance, approval and were included in the decision-making process regarding not only their individual positions, but also,

the running of the department. The Plaintiff contends that his questions and concerns to McIlwee and Nester about his work assignments fell upon deaf ears, unlike those of his colleagues.

**28.**

The Plaintiff contends that he performed a unique position, one which he was solely responsible for, that McIlwee and Nester cared little about, if at all. Yet, the Plaintiff contends that his workload was substantial. The Plaintiff further contends that when he requested additional assistance in performing his job, McIlwee and Nester rejected his request.

**29.**

The Plaintiff contends that after his suspension, he immediately complained to high-ranking city officials, including Lauren Hildebrand, the Director, that he believed he was being suspended and targeted due to his age and race. Yet, nothing was done.

**30.**

Unbeknownst to the Plaintiff, McIlwee and Nester began monitoring every single move he made at work in an effort to find a basis for termination. In approximately August, 2020, the Plaintiff was presented with a "Decision Day Agreement" which required him to accept the terms of the agreement or be terminated immediately. The Plaintiff further contends that McIlwee and Nester were aware that he could not perform all of the tasks set out in the Decision Day Agreement by the deadlines decided; however, he was forced to sign the agreement or be terminated. The Plaintiff contends that he signed the agreement under duress and threat of termination. The Plaintiff further contends that prior to being presented with the Decision Day Agreement, he had not been advised that he was performing his job in less than a satisfactory manner by anyone.

**31.**

The Plaintiff contends that he was ultimately terminated in March, 2021, in part for the personal use of the company vehicle, and for allegedly failing to perform his job satisfactorily under the terms of the Decision Day Agreement. Charles Boyles, II, then City Manager, upheld his termination in May, 2021. Thereafter, the Plaintiff exhausted all of his administrative remedies by appealing the City Manager's decision to the Board. Ultimately, the Board upheld the City Manager's decision, and in October, 2021 the Plaintiff's termination became final.

**32.**

The Plaintiff contends that the Defendant City's reasons for terminating him are pretextual and the Defendant City did not have a legitimate business reason for terminating him; and that he was terminated due to his race and/or age and/or in retaliation for opposing discrimination in employment.

**33.**

The Plaintiff's claims of the violation of 42 USC § 1981, 42 USC §1983, the ADEA and Title VII stem from the above allegations of disparate treatment and wrongful termination. The Plaintiff further contends that he suffered pecuniary and non-pecuniary damages as a result of the Defendant's conduct.

**34.**

The Plaintiff contends that after complaining about age and race discrimination to Hildebrand, he was informed that nothing could be done and that his suspension would not be overturned.

**35.**

At all times material herein, the Defendant City had the power, ability, authority, and duty to intervene, supervise, prohibit, control, regulate, discipline, and/or penalize the conduct of all other Defendants and/or supervisors, agents or employees as described herein above.

**36.**

The Plaintiff contends that the acts of the Defendant City, its agents, employees and supervisors were undertaken maliciously or in reckless disregard for his right to be free from discrimination. Further, that the Defendant City should be punished, as a wrongdoer and to serve as an example or warning to other Defendants not to engage in conduct of the types described herein.

**37.**

The Plaintiff contends that the Defendant knew, or should have known, that McIlwee, Nester and Hildebrand were unjustifiably treating him differently than non-black, male employees under the age of forty (40).  Notwithstanding, the Defendant did nothing.  Further, its failure to act accordingly effectively ratified and condoned the discriminatory treatment of the Plaintiff. Plaintiff further contends that such action by the Defendant City creates an inference of race and age discrimination.

**38.**

All co-workers and supervisors were, at all times herein, working within the course and scope of their employment and in furtherance of the employers business. Further, pursuant to the doctrine of respondeat superior, the Defendant City is vicariously liable for acts herein alleged against those co-workers and supervisors.  Alternatively, the acts of the aforementioned employees may not have been within the scope of their employment. Plaintiff alleges that the employer remains liable for its negligent retention of those employees.

**39.**

Plaintiff contends that as a result of Defendant's discriminatory treatment of him, he has suffered and continues to suffer emotional distress, physical sickness and personal injury, including but not limited to, headaches, depression, insomnia, anxiety, and stress.

**40**.

Defendant City's failure to act constituted a ratification of the supervisors' acts.

The Plaintiff further contends that the Defendant City, by and through their agents, acted with reckless indifference to his constitutional and statutory right to work in an environment free from discrimination.

**41.**

The Plaintiff contends that after his termination, both McIlwee and Nester, and often times up to two (2) other non-minority employees under the age of forty (40), performed many of his previous job responsibilities.

**42.**

The Plaintiff contends that he (1) is a member of a protected class; (2) was performing at a level that met the employer's legitimate expectations at the time of his termination; (3) suffered an adverse employment action; and (4) was replaced by a similarly or less qualified individual(s) from outside his protected class, or his position remained open.

**INJUNCTIVE RELIEF**

1.  Plaintiff has no plain, adequate or complete remedy at law to redress the wrong alleged, and this suit for injunctive relief is his only means of securing adequate relief. Plaintiff is now suffering and will continue to suffer irreparable injury from Defendant City's policy, practice, custom, and usage as set forth herein, unless and until enjoined by this Court.

2. The aforementioned acts of the Defendant City constitute unlawful discrimination against Plaintiff in violation of 42 USC § 1981, 42 USC §1983, the ADEA and Title VII.

## COUNT ONE

The Defendant City is liable to the Plaintiff for wrongful termination and for subjecting him to disparate treatment and discrimination in terms of work conditions, privileges, benefits and work environment due to his race in violation of 42 U.S.C. § 1981, 42 USC 1983 and Title VII of the Civil Rights Act of 1964, and as amended in 1991.

## COUNT TWO

The Defendant City is liable to the Plaintiff for wrongful termination and for subjecting him to disparate treatment and discrimination in terms of work conditions, privileges, benefits and work environment due to his age in violation of the ADEA.

## COUNT THREE

The Defendant City is liable to the Plaintiff for retaliating against him with regard to the terms, conditions, privileges and termination of employment due to his complaints of the violation of employment practices made unlawful under the "ADEA," and Title VII of the Civil Rights Act of 1964, and as amended in 1991.

**WHEREFORE, Plaintiff prays the Court that it:**

1. Enter a declaratory judgment that the practices complained of herein are unlawful and in violation of Plaintiff's rights;

2. Permanently enjoin the Defendant City from engaging in said unlawful practices, policies, customs, and usages set forth herein and from continuing any and all other practices shown to be in violation of applicable law;

3. Award Plaintiff compensatory damages for pecuniary losses, emotional pain, personal sickness, physical injuries and mental anguish, together with attorneys fees and the costs and disbursements of this action;

4. Award Plaintiff backpay with prejudgment interest, and affirmative relief necessary to eradicate the effects of the unlawful employment practices;

5. Reinstate Plaintiff to his previous, or a substantially similar position;

6. Award Plaintiff frontpay in lieu of reinstatement;

7. Grant Plaintiff a jury trial on all issues of fact, and;

8. Grant such other relief as may be just and proper.


This the 29th day of April, 2022.

TUCKER LAW FIRM, PLC

BY:   /s/ William C. Tucker
      William C. Tucker
      690 Berkmar Circle
      Charlottesville, Virginia 22901
      Telephone:   (833) 388-2537
      Facsimile:   (434) 978-0101
      Email:       bill.tucker@tuckerlawplc.com
      VA Bar # 40754

GRAY NEWELL THOMAS, LLP.

BY:   /s/ Angela Gray
      Angela Newell Gray
      7 Corporate Center Court, Suite B
      Greensboro, NC  27408
      Telephone:   (336) 724-0330
      Facsimile:   (336) 458-9359
      Email:       angela@graynewell.com
      N.C. Bar #21006

      *Attorneys for Plaintiff*